SPENCER M. JUDD, ESQ.
Nevada Bar No. 010095
9420 Mountainair Ave.
Las Vegas, NV 89134
(702) 606-4357
(702) 360-4769 facsimile
Spencer@sjuddlaw.com
*Attorneys for William Gayler,
Managing Member of CH Angelus II, LLC*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| IN Re:<br><br>CH. Angeles II, LLC.<br><br>Debtor. | Case No.: BK-S-12-22209-MKN<br>Chapter: 7<br><br>Date of Hearing: January 23, 2013<br>Time of Hearing: 2:30 p.m.<br>Courtroom: 2<br><br>**DECLARATION OF WILLIAM GAYLER IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §707** |
|---|---|

### DECLARATION OF WILLIAM GAYLER IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §707

STATE OF NEVADA  )
                 ) ss
COUNTY OF CLARK  )

The undersigned William Gayler hereby swears, under penalty of perjury, that the following assertions are true of his own personal knowledge:

1. I am over the age of eighteen (18) years.

2. I am a resident of the state of Nevada and reside in Clark County.

3. I collectively own and control approximately eighty-eight percent (88%) of

shares in CH Angelus II ("CH II"), twelve and one-half percent (12.5%) in the William A. Gayler Irrevocable Trust ("Gayler Trust"), thirty five and one half percent (35.5%) as Managing Member of Groth LLC, a Nevada limited liability company ("Groth"), and forty and seven-tenths percent (40.7%) as Managing Member of Ch. Pichon, LLC, a Nevada limited liability company ("Pichon").

4. I was appointed Managing Member of CH Angelus II, along with Barry R. Moore ("Moore").

5. On or about August 6, 2009, other CH II Members, including Barry R. Moore, (collectively "Plaintiffs") filed a complaint against me and others in the Eighth Judicial District Court in Clark County, Nevada, Case No. A-09-596777-C ("State Court Case.") The State Court Case is not relevant herein except as it pertains to my authority as managing member of CH II.

6. A bench trial in the State Court Case commenced in front of the Honorable Judge Denton; however, my portion was stayed by the filing of my personal bankruptcy proceeding, and no one appeared to represent my interests.

7. On March 15, 2011, the Honorable Judge Denton entered his Findings of Fact and Conclusions of Law. On or about July 21, 2011, Alper, a defendant in the Supreme Court Case, appealed the decision to the Nevada Supreme Court. Discussions ensued as part of the Nevada Supreme Court's NRAP 16 Settlement Program.

8. On December 8, 2011, a member meeting was held for both CH Angelus I (an entity not relevant to the proceedings herein) and CH II, and a quorum was

present. The sole issue for the meeting was settlement of the State Court Case. As I was the Managing Member of both entities, I recused myself, and appointed John Waroe as the Special Manager solely for the December 8, 2011 meeting for purposes of the settlement vote. A vote ensured and approval was granted to accept a minimum of One Million Three Hundred Thousand Dollars ($1,300,000.00) to settle the State Court Case, and such settlement amount would be split between the entities, with fifty-eight percent (58%) going to CH I and forty-two percent (42%) to CH II.

9. Alper reached settlement with the Plaintiffs, agreeing to pay One Million Four Hundred Thousand Dollars ($1,400,000.00) to the Plaintiffs in exchange for certain consideration related to real property. However, approval of the settlement agreement was never ratified by a vote of members.

10. On January 14, 2012, a member meeting was held for CH II Members to discuss the verbiage of the settlement agreement, among other items. Again, I sought to appoint John Waroe as Special Manager for this meeting, but the appointment was not ratified as the meeting quickly deteriorated and was terminated before it officially commenced. As the meeting never officially came to order, no motions were brought, no votes were cast and no action was taken at this meeting.

11. On or about May 18, 2012, Plaintiffs filed a motion to have O'Brien named as the Managing Member of CH II for the sole purpose of executing the settlement agreement. As previously stated, authority to sign the settlement agreement was never approved by a majority vote of members; however, this

Motion was approved by Judge Denton.

12. On June 7, 2012, O'Brien improperly noticed a meeting of CH II by providing seven (7) days' notice instead of the required minimum notice of twenty-one (21) days. Section 8.04 of the operating agreement unambiguously states the notice requirements:

> 8.04 Meetings of, and Action by, the Non-Managing members. Meetings and the conduct thereof and therest shall be governed as follows:
>
> (a) Meetings of the Non-Managing Members to vote upon any matters as to which the Non-Managing members are authorized to take action under this Agreement may be called at any time by either Managing Members or the Non-Managing Members and shall be called by a managing member within ten (10) days after receipt by such Managing Member of a written demand for the calling of such meeting from one or more Non-Managing Members holding 25% or more of the outstanding Non-Managing Membership Shares. ***Such meeting will be held at a time fixed by such Managing Member(s) or such Non-Managing Members as the case may be) which is not less than twenty-one (21) days*** no more than sixty (60) day after the mailing of the notice of the meeting and at a place in Las Vegas, Nevada. All expenses of or incident to the meeting including but not limited to the expenses of the Managing Members for travel, hotels, etc., and notification shall be borne by the Company. All expenses of attending and meeting by the Non-Managing Members shall be borne by them or each of them, as the case may be; …. (Emphasis added).

13. As Managing Member of both entities, I objected to the lack of and authority to provide notice, and stated that I would provide appropriate notice to hold such meeting. Nevertheless, O'Brien improperly proceeded with the meeting on June 14, 2012 and set an agenda.

14. The June 14, 2012 meeting had numerous other legal problems aside from being improperly noticed. Moore was the only person in attendance that had any membership interest in CH II, and his 11.3% ownership is insufficient to unilaterally take action on behalf of CH II. The other attendees had

membership in a related entity, CH I and/or a minority percentage interest in a non-manager member entity of CH II, but, in either case, other than Moore, no one had any legal right to participate in decisions on behalf of CH II.

15. Present at the meeting were the following attendees, and their respective membership interests in CH II, if any:

| Member Name | Percentage Membership Interest in CH II |
|---|---|
| Douglas A. Thomas, MD, DPT Holdings | None |
| John Esposito | None |
| Cynthia Brown | None |
| Barry R. Moore | 11.3% |
| William R. Godfrey | None, however, he owns 6.25% of a non-managing member entity, that owns 35.5% of CH II |
| John O'Brien | None |
| A. Wade Leavitt for Berts Bay PSP | None |
| Rodney Leavitt | None |
| Campbell | None |

16. Moreover, the meeting was improperly brought to order and the motions made within the meeting were invalid, as they were purportedly made on behalf of CH II, but were made by individuals without proper legal authority to do so. The transcript of the meeting states that members Campbell and Esposito made and seconded the motion to open the meeting:

> MR. O'BRIEN: ... And if there is a motion to waive the formal notice meting requirements contained in Section 804 of [CH I] and [CH] II operating agreements and to allow the meeting to go forward as duly noticed.
>
> MR. CAMPBELL: I will so move.
>
> MR. O'BRIEN: Is there a second to that?
>
> MR. ESPOSITO: (Indicating).

>       MR. O'BRIEN. There is a second by Mr. Esposito.

17. As Campbell and Esposito own no share of CH II, they have no authority to act on its behalf, and they have no authority to make or second motions. Thus, the meeting was improperly brought to order.

18. Campbell and Esposito's motion to validate the voting procedure is equally invalid for the same reason; the Operating Agreement for CH II only allows members of the entity to cast votes on its behalf. The Transcript clearly states that it was Mr. Campbell and Mr. Esposito who moved to validate and formally adopt the voting procedure for that meeting:

>    MR. O'BRIEN: … On the member voting procedure all votes have been received to date are valid and must be counted toward the voting tally. All votes received to date are irrevocable. Members present must cast their irrevocable vote at the meeting.
>
>    So is there a motion for all members to agree to the above three bullet points that I just mentioned and adopt this as a formal voting procedure for the meeting?
>
>    MR. CAMBELL: So moved.
>
>    MR. O'BRIEN: Second Mr. Esposito?
>
>    MR. ESPOSITO: Yes.

19. As Campbell and Esposito have no authority to take corporate action on behalf of CH II, their motion to validate the voting procedure is invalid. Moreover, the votes cast in favor of this motion by Cynthia Brown, A. Wade Leavitt, Rodney Leavitt, Douglas A. Thomas and John Esposito should be stricken completely, as they have absolutely no ownership interest in CH II.

20. Campbell and Esposito continue to make and second a number of other motions, which are invalid for the same reason. These other motions include

their motion to confirm approval of the settlement agreement, and their motion to appoint Barry Moore as the new managing member of CH II. Again, although not relevant to an invalid motion, the votes cast by Brown, Leavitt, Thomas and Esposito should be stricken.

21. On July 2, 2012, Plaintiffs filed a Motion to Approve Member Resolutions on Order Shortening Time. There are numerous legal problems with this motion. The resolutions sought to have the court approve included those purportedly made at the June 14, 2012 meeting, which, as discussed above, was invalid for many reasons. The motion sought to have the settlement approved, but at no time did the managing members authorize approval of the settlement; the only authorization granted by the managing members was at the December 8, 2011 meeting when they voted to proceed with settlement discussions.

22. The motion also falsely stated that John Waroe was voted as the new Managing Member of CH II by majority approval. Such statement is patently false. Mr. Waroe was appointed as Special Manager of the December 8, 2011 meeting only, and this limitation was acknowledged in a December 12, 2011 correspondence from Marquis Aurbach Coffing to John Waroe, which stated in part,

> A meeting for the Ch. Angelus, LLC ("Angelus I") and Ch. Angelus II, LLC ("Angelus II") members was held yesterday on December 8, 2011 at 2421 Tech Center Court, Las Vegas, Nevada 89128 at 1:30 p.m. (the "Meeting). *As you know, the members present, in person and in proxy, appointed you as Managing Member of the meeting* (emphasis added).

23. This fact was further clarified by Mr. Waroe in a letter to the Honorable Judge Denton dated May 3, 2013, wherein he resigned as the Managing Member of

the State Court Case and specifically stated, "I was appointed as a onetime Manager only for the meeting held on December 8, 2011, as per the enclosed."

24. In August 2012, Plaintiffs filed a motion in the State Court Case to approve the invalid resolutions from their meeting of June 14, 2012.

25. Judge Denton granted the Motion in part, but denied it as to removing me as the managing member of CH II.

26. As of the date of this filing, I remain the Managing Member of CH II, because there was no valid meeting to effect any change. As discussed, the meeting that purported to remove me from the status of Managing Member was improperly noticed and failed to have a quorum present. Thus, any votes that occurred were void and invalid.

27. I sought the advice of a bankruptcy attorney as to whether a Chapter 11 or a Chapter 7 petition would be more appropriate for CH II.

28. The State Court Case proceeding has absolutely no relevance to my decision to file for bankruptcy protection on behalf of CH II.

29. On or about October 30, 2012, I filed for Chapter 7 bankruptcy protection on behalf of CH II as its managing member owning a controlling interest. My counsel inadvertently filed a corporation resolution authorizing bankruptcy protection under Chapter 11 instead of Chapter 7, and I authorized him to prepare the proper resolution to file contemporaneously with this Declaration.

*Signature page follows.*

I declare under penalty of perjury under the laws of the United States that these facts are true and correct to the best of my knowledge and belief.

DATED this __9__ day of __January__, 2013.

_____
William Gayler

SUBSCRIBED AND SWORN TO before me this __9th__ day of __January__, 2013.

_____
NOTARY PUBLIC in and for said County and State.

Notary Public - State of Nevada
COUNTY OF CLARK
SPENCER MARK JUDD
No. 03-85064-1   My Appointment Expires July 2, 2016